[No. 8529-5-III.   Division Three.   March 21, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. EUCEBIO
MORALES, *Appellant.*

*Thomas Bothwell* and *Prediletto, Halpin, Cannon &
Scharnikow,* for appellant (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert
Northcott, Deputy,* for respondent.

GREEN, J.—Eucebio Morales, a Hispanic, was charged
and convicted of delivery of cocaine, a controlled substance.
RCW 69.50.401(a). During the jury selection process, the

State exercised peremptory challenges removing the only two Hispanic members from the jury panel. Following his conviction, Mr. Morales moved for a new trial contending he was denied equal protection of the laws, in violation of the fourteenth amendment to the United States Constitution, in that the State systematically excluded Hispanic surnamed jurors from the jury panel. He cited *Batson v. Kentucky,* 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986) in support of his motion. The court denied the motion and Mr. Morales appeals contending this was error.

In *Batson* the prosecutor exercised his peremptory challenges to remove all four black persons from the venire and a jury of all white persons was selected. At that point, defense counsel moved to discharge the jury before it was sworn contending the prosecutor's removal of all black veniremen violated the defendant's right to a jury drawn from a cross section of the community under the sixth amendment to the United States Constitution and denied him equal protection of the law under the Fourteenth Amendment. The motion was denied on the basis these constitutional rights applied to the selection of those persons from which the jury would be selected, but not to the selection of the petit jury itself. After granting certiorari, the United States Supreme Court extended these constitutional rights to the selection of the petit jury. In its decision, the Court stated:

> Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure. . . . [476 U.S. at 86.]

> . . .
> . . . Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges "for any reason at all, as long as that reason is related to his view concerning the outcome" of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable

impartially to consider the State's case against a black defendant. [476 U.S. at 89.]

. . .

. . . To establish [a prima facie] case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination. [476 U.S. at 96.]

. . .

Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. . . . [W]e emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race. [476 U.S. at 97.]

(Citations omitted.) *Batson,* 476 U.S. at 86–97. Since the defendant made a timely objection to the prosecutor's removal of all black persons on the venire, the Supreme Court remanded the case back to the trial court for further proceedings to determine whether there was prima facie purposeful discrimination and, if so, a neutral explanation by the prosecutor for his action. We review the issue presented in the instant case in light of the principles announced in the *Batson* decision.

One of the Hispanic jurors was Joe Guerra. During his voir dire, it was discovered he had a brother–in–law who

had been arrested for an alcohol or drug problem. When asked if he might be overly sympathetic to the defendant or critical of the defendant because of what his brother–in–law went through, he answered: "Critical because of what my brother–in–law went through. . . . [critical] [a]gainst the state." The deputy prosecutor, in an affidavit explaining his peremptory challenge of Mr. Guerra, stated:

> That during voir dire of a Mr. Joe Guerra, I discovered that he had a brother or a brother–in–law who had been convicted of an offense similar to that for which the defendant was on trial (involving drugs) and as a result of this experience, Mr. Guerra stated that he felt that he would be more "critical" or biased against the State and would be more sympathetic toward the defendant;

> That because of Mr. Guerra's apparent prejudice toward the State I chose to exclude him through a peremptory challenge;

> That I felt it would be more appropriate to perempt him rather than challenge him for cause based on tactical considerations;

Assuming arguendo there was a prima facie showing of possible discrimination, on this record the State has provided an adequate, neutral explanation for the challenge of Mr. Guerra.

With respect to the second Hispanic juror, Trinidad Meza, the voir dire examination was as follows:

By [Deputy Prosecutor]:
Q Good morning, Mrs. Meza.
A Yes.
Q What Mr. Lara says is true about believing the lay witnesses as well as the police officers, and all witnesses should maybe be evaluated the same or given the same credence.
    One of the instructions on the law that the Judge will give you later on will be more specific, but what I am going to ask you is: Can you give consideration at least to the fact that the officers who will be testifying, including Mr. Mong, have training and experience that you can take into consideration?
A Sure.

Q Do you have any friends or relatives who have been involved in drugs or alcohol to the extent that their experiences might cause you to have a biased ability to determine facts in this case today?

A No.

Q Will you make your decision as to guilt or innocence based solely on the facts heard in this courtroom today?

A Certainly.

Q Do you think that you can be fair to the people of the State of Washington as well as the defendant today?

A Yes.

[DEPUTY PROSECUTOR]: Thank you. Pass for cause.

BY [DEFENSE ATTORNEY]:

Q Mrs. Meza, you answered the question about having a physical problem that might impair your ability to sit here today. Now, this case probably will finish today and we will get a break sometime this morning and a break during lunch and then midafternoon break. Is that going to be enough for you—

A Yes.

Q —to keep you comfortable?

Is there anything about your experiences in life, family, friends, that would prevent you from being an unbiased juror?

A No, I could be fair.

[DEFENSE ATTORNEY]: Thank you. Pass for cause.

The affidavit of the deputy prosecuting attorney explains that the State's reasons for peremptorily challenging this juror were based upon his observations:

a. Ms. Meza appeared to be extremely uncomfortable and shifted about in her seat.

b. She would not make direct eye contact with me, indicating some sort of apprehension.

c. Her facial expressions indicated to me extreme discomfort and possibly a fear of her surroundings and the proceedings.

That based upon my observations of Ms. Meza, I decided that she would possibly be a weak, indecisive and fearful juror;

That no other persons exhibited similar behavior or facial expressions as did Ms. Meza;

During counsel's argument on the motion for new trial, the court stated:

> I can recall Miss Meza. Just by what she looks like, at least I have that picture in my mind what she looks like and I can't say whether or not facial expressions indicated discomfort or possible fearfulness. I did note that she seemed to shift in the seat quite often and appeared to be somewhat nervous.

Following the hearing, the court entered findings of fact which stated: "Ms. Meza appeared to be nervous, shifting in her seat, avoiding direct eye contact, had facial expressions and body movements indicating uneasiness or discomfort." The prosecutor's observation of this juror as outlined in his affidavit along with the court's confirmation of some of those observations constitute a sufficient neutral explanation of the peremptory challenge of this juror.

Thus, we conclude there was no purposeful racial discrimination by the State's exercise of its peremptory challenges.

While the question of timeliness of Mr. Morales' objection has not been raised in this appeal, such an objection should be raised prior to presentation of the evidence, rather than by a motion for a new trial, to avoid the possible issue of waiver.

Affirmed.

THOMPSON, C.J., and MUNSON, J., concur.

Review denied at 112 Wn.2d 1028 (1989).